

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-14-2005

# Martorana v. Bd Trustees 420

Precedential or Non-Precedential: Precedential

Docket No. 04-1181

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Martorana v. Bd Trustees 420" (2005). *2005 Decisions.* Paper 1277.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1277

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 04-1181

———————

MICHAEL MARTORANA,
                    Appellant
v.

THE BOARD OF TRUSTEES OF STEAMFITTERS
LOCAL UNION 420 HEALTH,
WELFARE AND PENSION FUND;
STEAMFITTERS LOCAL UNION 420

———————

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 03-cv-01029)
District Judge:  Honorable Stewart Dalzell

———————

Argued January 25, 2005

Before:  SCIRICA, <u>Chief</u> <u>Judge</u>, RENDELL and FISHER,
                    <u>Circuit</u> <u>Judges</u>.

(Filed:  April 14, 2005)

1

John N. Salla
Joseph M. Armstrong    [ARGUED]
Salla & Armstrong
2001 Market Street, Suite 3410
Two Commerce Square
Philadelphia, PA  19103
   *Counsel for Appellant*

Margaret M. Underwood    [ARGUED]
Jacoby Donner
1515 Market Street, Suite 2000
Philadelphia, PA  19102
   *Counsel for Appellee*

---

OPINION OF THE COURT

---

RENDELL, Circuit Judge

Appellant, Michael Martorana, brought suit against the Board of Trustees of the Steamfitters Local Union 420 Health, Welfare and Pension Fund ("the Board") alleging that the Board improperly denied benefits due to him pursuant to an ERISA plan.  The Board then brought a counterclaim alleging that Martorana owed $4100 in back contributions toward the cost of health care coverage from October 1994 to December 1999.

The District Court granted summary judgment in favor of the Board on both Martorana's claim and the Board's counterclaim. The District Court also awarded attorney's fees to the Board for Martorana's claim for increased pension benefits and directed that these fees be paid by way of the Board's withholding no more than $160 per month from Martorana's pension benefits. On appeal, we must decide (1) whether the grant of summary judgment was proper, (2) whether the order assessing fees against Martorana's pension benefits contravenes ERISA and its underlying policies, and (3) whether the award of attorney's fees was proper.

## I. Factual and Procedural Background

Martorana joined the Union on July 27, 1972, and worked steadily until he sustained a serious injury while performing work as a Union member on March 21, 1994. He then began to collect Workers' Compensation benefits, which he continued to receive at least through November 2003.

Martorana applied for Social Security disability benefits on November 30, 1995, and the Social Security Administration (SSA) determined that he was eligible for such benefits on December 14, 1997. Although the SSA found that Martorana became disabled on March 21, 1994, it awarded benefits retroactive only to November 1994 because of certain time restrictions imposed by federal law.

In addition to his Workers' Compensation and Social Security benefits, Martorana requested, and received, the Disability Retirement Pension to which he was entitled under the Union's Pension Plan. In the summer of 2000, Martorana first contended that the Board had improperly calculated his disability pension benefits because, when calculating his length of service (upon which the amount of pension is based), it failed to take into account the period during which he received Workers' Compensation. At its July 20, 2000 meeting, the Board rejected Martorana's claim because under the terms of the pension plan "credited hours," but not "contribution hours," accrue during the period when a worker is receiving Workers' Compensation, and the calculation of disability pension benefits depends on one's total contribution hours not one's credited hours. Martorana appealed this decision unsuccessfully to the Board.

While Martorana was making his claim for additional benefits, the Board demanded that Martorana pay $4400 in past-due healthcare contributions to the Welfare Plan for the medical coverage he had received between October 1994 and December 1999. Martorana argued that the Welfare Plan did not require him to contribute to the plan while he was an "active" participant. The Board pointed out that he could not be an "active" participant in the Welfare Plan while simultaneously receiving benefits under the Pension Plan. When Martorana resisted contributing to the Welfare Plan, the Board refused to pay $300 of his medical claims, and it now concedes that the

4

amount of Martorana's past-due healthcare contributions should be reduced by $300 to $4100.

Martorana initiated this action in The Delaware County Court of Common Pleas, alleging that in calculating his years of service, and in assessing past-due healthcare contributions against him, the Board failed to comply with the terms of the Pension Plan and Welfare Plan, respectively, in violation of ERISA, 29 U.S.C. § 1001, et seq., and requesting declaratory judgment.

The Board removed the case and filed a counterclaim for $4100 in past-due healthcare contributions. On December 22, 2003, the District Court entered an order granting summary judgment in favor of the Board on all claims and thereafter in January 2004 entered a further order granting judgment in favor of the Board for $8,217.08 in attorney's fees and costs based on the Pension Plan claim, stating "[d]efendant may collect the judgment... only by reducing plaintiff's monthly Disability Retirement Pension by an amount not to exceed $160.00 per month." The District Court noted "awarding the attorneys fees and costs incurred in defending Martorana's claim for additional pension benefits serves the socially useful purpose of deterring similar unfounded claims that consume courts' limited resources."

Martorana filed two unsuccessful motions for reconsideration in the District Court and now appeals to us. On

5

appeal, we must decide whether the grant of summary judgment against Martorana on the Pension Plan claim and the Welfare Plan claim were proper, whether the order allowing essentially for a monthly set-off of Martorana's pension benefits violates ERISA and its underlying policies, and whether the award of attorney's fees was appropriate. We find that the grant of summary judgment was appropriate, but that the District Court erred in both the award of attorney's fees and the manner in which it ordered them to be paid. Accordingly, we will reverse in part and remand to the District Court.

The District Court had jurisdiction pursuant to ERISA, 29 U.S.C. § 1132(e) and general federal question jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction over this appeal under 28 U.S.C. § 1291.

## II. Discussion

### A. Summary Judgment

Martorana brought his claims pursuant to 29 U.S.C. § 1132(a)(1)(B), invoking his right to sue under ERISA to "recover benefits due to him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." We exercise plenary review over the District Court's decision to grant summary judgment. See Blair v. Scott Specialty Gases, 283 F.3d 595, 602-03 (3d Cir. 2002). We apply the same

6

standard as used by the District Court. Id.

In Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989), the Supreme Court stated that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine benefits or to construe the terms of the plan." In the present case, the Pension Plan gives the Board "the sole and absolute discretion to determine eligibility for benefits under the Plan, and to construe and interpret the provisions of the Plan..." Similarly, the Welfare Plan provides that "[t]he Trustees shall have the sole and absolute discretion to determine eligibility for benefits under the Plan of Benefits, and to construe and interpret the provisions of the Plan of Benefits and this Trust Agreement..." Therefore, we must determine whether the decisions of the Board in rejecting Martorana's claims for increased pension funds and requiring payment of back healthcare premiums were arbitrary and capricious.

We will overturn the decisions of the Board only if they were "without reason, unsupported by the evidence or erroneous as a matter of law. This scope of review is narrow, and 'the court is not free to substitute its own judgment for that of the [administrator] in determining eligibility for plan benefits.'" Mitchell v. Eastman Kodak Co., 113 F.3d 433, 439 (3d Cir. 1997) (citations omitted).

7

We have little difficulty concluding that the Board's ruling was not arbitrary or capricious. As noted above, Martorana seeks to ignore the plain provisions of the plan that provide that only credited hours accrue during the period when a worker is receiving Workers' Compensation, and the calculation of disability pension benefits depends not on total credited hours, but rather on contribution hours. Martorana's refusal to recognize this renders his claim, as noted by the District Court, totally lacking in merit.

Furthermore, we find that the Board's determination that Martorana was a Retiree, and, therefore, required to make contributions to the healthcare fund, was supported by ample evidence, and, more specifically, by the clear terms of the plan. We, therefore, find that neither decision by the Board was arbitrary or capricious, and will affirm the District Court's grant of summary judgment on both.

## B. Equitable Set-off of Pension Benefits

The District Court's award of attorney's fees, discussed more fully below, was accompanied by its allowance of a monthly set-off of Martorana's pension benefits as the method of payment of those fees. Martorana contends on appeal that the District Court's order effected an attachment or equitable

set-off of his pension benefits that contravenes ERISA policy.[1]

_____

[1]Appellees contend that the issue of equitable set-off is not properly before us because in his Notice of Appeal Martorana only stated that he was appealing the December 22, 2003 Order of the District Court, which granted summary judgment to the Board on both claims and awarded the Board attorney's fees with respect to Martorana's increased pension claim. However, under Fed. R. App. P. 4, this Notice was required to be filed within thirty days of the December 22, 2003 Order and, therefore, would have had to have been filed before the District Court issued the order allowing for equitable set-off on January 26, 2004. Subsequently, in his Concise Summary of the Case, filed with this Court on February 2, 2004, Martorana specifically stated that he was appealing "the order of the lower court wherein his pension benefits are subject to garnishment." As we have noted in the past, we "will exercise appellate jurisdiction over orders that are not specified in the notice of appeal where: (1) there is a connection between the specified and unspecified orders; (2) the intention to appeal the unspecified order is apparent; and (3) the opposing party is not prejudiced and has a full opportunity to brief the issues." Polonksi v. Trump Taj Mahal Associates, 137 F.3d 139, 144 (3d Cir. 1998). Furthermore, "[i]n the attorney's fees context, this court has found that 'an adequate connection exists between a specified order that designates the prevailing party for purposes of attorney's fees and an unspecified order that quantifies the attorney's fee award." Id. (citations omitted). Therefore, we have little difficulty concluding that the issue of equitable set-off as a means to recoup attorney's fees is properly before us on

9

He also contends that the allowance of equitable set-off violates the terms of the Pension Plan itself, and Pennsylvania law. We find that the equitable set-off does contravene ERISA and ERISA policy, and need not discuss Martorana's other two contentions.[2] ERISA § 206(d)(1) mandates that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. 1056(d)(1) (2005). At first glance, therefore, it would seem that any attempt to attach pension funds would violate the statute. However, in the past, we have recognized certain exceptions to ERISA's anti-attachment provisions. Specifically, in Coar v. Kazmir, 990 F.2d 1413 (3d Cir. 1993), a plan fiduciary, who was also a plan participant, challenged the reduction of his pension benefits to allow the plan to recoup the damages he caused when he engaged in a conspiracy to obtain kickbacks in exchange for channeling $20 million from the pension fund's assets. In Coar, we held that such a reduction was permissible. In doing so, we observed the apparent conflict between two ERISA sections - Section 206(d)(1) and Section 409(a). For, Section 409(a)

appeal.

[2] Our review of the District Court's determination that equitable set-off was a permissible means by which the Board could recover attorney's fees involves examination of a conclusion of law. Therefore, our review of this issue is de novo. Allen-Myland, Inc. v. IBM Corp., 33 F.3d 194, 201 (3d Cir. 1994).

10

mandates that a person who breaches his or her duties to a pension fund "shall be personally liable to make good to such plan any losses to the plan resulting from such breach... and shall be subject to such other equitable relief as the court may deem appropriate..." 29 U.S.C. § 1109(a) (2005). We, therefore, concluded that in the context of a restoration of plan funds due to a fiduciary breach, ERISA permits attachment of or setoff against the pension benefits of a fiduciary/plan participant who has committed the breach.

However, in arriving at this conclusion, we observed the caution with which the Supreme Court has approached the subject of attachment of ERISA pension plan benefits. In Guidry v. Sheet Metal Workers Nat'l Pension Fund, 493 U.S. 365, 376 (1990), the Court warned:

> Nor do we think it appropriate to approve any generalized equitable exception -- either for employee malfeasance or for criminal misconduct -- to ERISA's prohibition on the assignment or alienation of pension benefits. Section 206(d) reflects a considered congressional policy choice, a decision to safeguard a stream of income for pensioners (and their dependents, who may be, and perhaps usually are, blameless), even if that decision prevents others from securing relief for the wrongs done them. If exceptions to this policy

11

are to be made, it is for Congress to undertake that task.

As a general matter, courts should be loath to announce equitable exceptions to legislative requirements or prohibitions that are unqualified by the statutory text. The creation of such exceptions, in our view, would be especially problematic in the context of an antigarnishment provision. Such a provision acts, by definition, to hinder the collection of a lawful debt. A restriction on garnishment therefore can be defended only on the view that the effectuation of certain broad social policies sometimes takes precedence over the desire to do equity between particular parties. It makes little sense to adopt such a policy and then to refuse enforcement whenever enforcement appears inequitable. A court attempting to carve out an exception that would not swallow the rule would be forced to determine whether application of the rule in particular circumstances would be 'especially' inequitable. The impracticability of defining such a standard reinforces our conclusion that the identification of any exception should be left to Congress.

Therefore, in undertaking our analysis in this case, we do so with the cautionary advice of the Supreme Court in mind. Because the present case is factually and legally distinguishable from Coar, we decline to extend the exception to ERISA's anti-garnishment provision to encompass the equitable set-off of pension benefits here. First, while Coar involved a perceived

12

conflict between two sections of ERISA, §§ 206(d) and 409(a), the case before us presents no such conflict. We are not called upon to reconcile two seemingly contradictory sections of the statute; rather, we must only determine whether an additional exception to § 206(d) should be made when a plan participant becomes obligated to pay the plan's fees when he brings a frivolous lawsuit. No other section of ERISA even speaks to this situation, much less mandates an exception in this circumstance.

Second, we are not confronted with a breach of fiduciary duty, as in Coar. Rather, unlike in Coar where a fiduciary who was also a plan participant knowingly deprived the plan of millions of dollars, in this case, Martorana simply exercised his right to bring suit under ERISA in order to determine his entitlement to certain benefits. This is the very purpose of 29 U.S.C. § 1132(a)(1). It does not follow from the District Court's determination that Martorana's suit over the pension benefits was frivolous that we should allow for recoupment of attorney's fees from the benefits. In Coar we were faced with deliberate, criminal behavior by a plan fiduciary which led to depletion of the fund. In allowing equitable set-off of Coar's liability to the pension fund against his own benefits, we were seeking to promote the purposes underlying ERISA. As we stated:

> Neither does the legislative history of § 206(d)(1), which courts have described as

13

'sparse' and 'inconclusive' indicate[s] that a dishonest trustee should be shielded from the consequences of a breach of fiduciary duty. On the contrary, the 'only available [legislative] history states that the objective of the provision was to 'further ensure that the employee's accrued benefits are actually available for retirement purposes...' If, as indicated by the legislative history, the anti-alienation provision is intended to 'protect plan beneficiaries by ensuring that plan assets are used only for payment of benefits' we think that Congress's purpose 'would be undermined, not advanced, by an interpretation that prohibited offset under these circumstances,' because the Pension Fund's assets would be dissipated further through payments to those who had looted the fund rather than being preserved for the beneficiaries' use. Coar, 990 F.2d at 1420 (citations omitted).

While Appellees argue that this rationale should lead us to extend Coar's reasoning to the case at hand, we decline to do so. While it may be argued that plan participants, like Martorana, who bring suits which are ultimately found to be frivolous, deserve the same treatment as fiduciaries who breach a duty to the Plan and "loot" the fund, we are not persuaded. For, unlike a deliberate looter, a plan participant who, in earnest, but in error (and perhaps obstinately) seeks to enforce

14

or clarify plan rights he believes he has, does not act with complete disregard for the well-being of the very fund which he is supposed to help manage. The fact that ERISA allows for the award of attorney's fees to the prevailing party at the discretion of the court in suits such as the one brought by Martorana is generally sufficient, we believe, to prevent plaintiffs from bringing suits which they know or strongly suspect to be without merit. There is no need to increase deterrence by running afoul of the statutory prohibition and assessing fees against the pension benefits of such participants.

Finally, in 1997, Congress amended § 206 to specifically allow for the set-off of pension benefits in several specific situations. Congress listed among these the very situation presented in <u>Coar</u>, namely when a fiduciary breaches his duty to the plan. 29 U.S.C. § 1056(d)(4)(A)(ii).[3] None of the amendments to § 206, however, specifically apply to the situation we are faced with here and we refuse to craft another

---

[3] The other exceptions provided by Congress allow for offset when it is ordered under a judgment of conviction for a crime involving the pension plan and when offset is ordered pursuant to a settlement agreement between the Secretary and the plan participant, or a settlement agreement between the Pension Benefit Guaranty Corporation and the participant, in connection with a violation (or alleged violation) of fiduciary duty, by a fiduciary or any other person. 29 U.S.C. § 1056(d)(4)(A)(i) and (iii).

exception to § 206 where Congress has not recognized one. Therefore, for the reasons stated above, we hold that the allowance of equitable set-off of attorney's fees from Martorana's pension benefits by the District Court contravenes ERISA policy and we will, therefore, reverse this order and remand for proceedings consistent with this opinion.

## C. Award of Attorney's Fees

Finally, on appeal, Martorana challenges the District Court's award of attorney's fees in this case. As noted above, the District Court has discretion to award attorney's fees to either party in an ERISA suit. See 29 U.S.C. § 1132(g)(1) (2005). We have previously required that district courts consider several factors before awarding such fees. These include: (1) the offending party's culpability or bad faith; (2) the ability of the offending parties to satisfy an award of attorney's fees; (3) the deterrent effect of an award of attorney's fees; (4) the benefit conferred upon members of the pension plan as a whole; and (5) the relative merits of the parties' positions. Ursic v. Bethlehem Mines, 719 F.2d 670, 673 (3d Cir. 1983).

Martorana contends that the District Court erred in giving too little weight to the first factor, Martorana's lack of bad faith, and too much weight to the others. Because we find that the District Court gave insufficient weight to the second factor, Martorana's ability to pay, we will reverse the award of

16

attorney's fees and remand for further consideration.

In considering Martorana's ability to pay, the District Court found that the record did not contain sufficient evidence to determine whether or not he could pay an award of attorney's fees, but did note that "[i]t seems likely that these fees and costs are not large and that the Board could recoup them by reducing Martorana's monthly Disability Retirement Pension by an affordable amount for a few years. Our hunches notwithstanding, we will not make a final finding as to Martorana's ability to pay at this time." Instead, the District Court determined that the monthly set-off from the pension benefit he was to receive would be appropriate. Indeed, the District Court appeared to be trying to help Martorana by requiring the plan to look only to this monthly allocation for satisfaction of the fee award, perhaps in recognition of Martorana's probable lack of other resources. Putting aside the possibility of the equitable set-off, the District Court made no other finding as to Martorana's ability to pay. Because articulation by the District Court of its analysis and conclusions on each of the five Ursic factors is mandated under our case law before an award is entered, See McPherson v. Employee's Pension Plan of American Re-Insurance Co., Inc., 33 F.3d 253, 254 (3d Cir. 1994), we hold that the District Court's failure to consider Martorana's ability to pay without the possibility of equitable set-off was error. We will therefore reverse the award of attorney's fees and remand for further proceedings consistent with this opinion.

### III. Conclusion

        Based on the reasoning above, we will AFFIRM the December 22, 2003 order of the District Court granting summary judgment to the Board on both claims.  However, we will REVERSE the January 26, 2004 order of the District Court granting attorney's fees to the board and allowing for their recoupment through an equitable set-off of Martorana's monthly pension benefits.

_____