

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-14-2005

# Chernavsky v. Holmdel Twp Pol Dept

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3621

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Chernavsky v. Holmdel Twp Pol Dept" (2005). *2005 Decisions.* Paper 1018.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1018

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 04-3621

DANIEL L. CHERNAVSKY,
                    Appellant

v.

TOWNSHIP OF HOLMDEL POLICE DEPARTMENT;
BRUCE PHILLIPS, in his official capacity and individual capacity,
Township of Holmdel, Chief of Police;
RAYMOND WILSON, Captain, in his official and his individual capacity;
JAMES SMYTHE, Corporal, in his official and individual capacity;
CAROL WILLIAMS, Township Administrator, in her official and individual capacity;
TOWNSHIP OF HOLMDEL

On Appeal from the United States District Court
for the District of New Jersey
D.C. Civil Action No. 01-cv-06207
(Honorable Stanley R. Chesler)

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 24, 2005

Before:  SCIRICA, *Chief Judge*, ALITO and RENDELL, *Circuit Judges*

(Filed: June 14, 2005)

OPINION OF THE COURT

SCIRICA, *Chief Judge*.

Daniel Chernavsky, a retired police officer, appeals the entry of summary judgment against him in his suit alleging retaliation for protected speech. We will affirm.

## I. Background

Chernavsky served as a police officer with the Township of Holmdel from 1992 until he suffered a heart attack in early 2001. The claims here stem from a report Chernavsky filed, alleging that fellow officer and Defendant James Smythe assaulted Kevin Martin, a suspect in custody.[1] Chernavsky contends that after he reported the incident to his superiors, he was repeatedly harassed by his fellow officers. Alleged incidents of harassment include being ostracized in the department, having his mailbox and time cards stolen and vandalized, being assigned to patrol a less desirable area of town, being singled out for disciplinary action,[2] being suspended from the Police Benevolent Association, and having his health benefits terminated in the years following his heart attack.[3] Chernavsky contends this retaliation and the failure of Township and

---

[1]Smythe was cleared of any wrongdoing, and as noted below, Chernavsky was later suspended from the Police Benevolent Association for allegedly filing a false report in the matter.

[2]Chernavsky was investigated by the Monmouth County Prosecutor's Office for mishandling a domestic violence complaint. Although that office declined to press criminal charges, Chernavsky was later found guilty of administrative violations and was suspended for 15 days without pay.

[3]The District Court's opinion detailed Chernavsky's specific allegations, along with the time line of events. As we write only for the parties, it is unnecessary to recount all the details here.

police officials to address these incidents violated 42 U.S.C. § 1983, the First

Amendment, and the New Jersey Conscientious Employment Protection Act, N.J. Stat.

Ann. § 34:19-1 *et seq.*, and constituted intentional infliction of emotional distress. He

brought charges against Chief of Police Bruce Phillips, Captain Raymond Wilson,

Township Administrator Carol Williams, Smythe, the Township, and the Police

Department.

The District Court granted summary judgment to all Defendants, dismissing with

prejudice Chernavsky's § 1983 claims, and dismissing without prejudice the remaining

state law claims. The court held there was no Township policy or custom of retaliating

against officers who exercised their First Amendment rights and that the individual

supervisory Defendants did not acquiesce in any unconstitutional actions. In addition, the

court held that even if the alleged harassment occurred, Smythe was not acting under the

color of law. On appeal, Chernavsky disputes each of these conclusions.

## II. Analysis

A. Jurisdiction and Standard of Review

The District Court had jurisdiction over Chernavsky's federal claims under 28

U.S.C. § 1331 and exercised supplemental jurisdiction under 28 U.S.C. § 1367 over his

related state claims. We have jurisdiction under 28 U.S.C. § 1291.

"We exercise plenary review over the District Court's decision to grant summary

judgment." *Martorana v. Bd. of Trs. of Steamfitters Local Union 420 Health, Welfare, &*

*Pension Fund*, 404 F.3d 797, 801 (3d Cir. 2005). Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002). The burden is on the non-moving party to demonstrate that there is sufficient evidence for a reasonable jury to find in its favor and that there is a dispute over facts that might affect the outcome of the suit. *Groman v. Township of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995). Once the moving party has presented evidence showing that there is no genuine issue of material fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

B. Evidence of a Township Policy or Custom of Retaliation

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. N.Y. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978); *see also Doby v. DeCrescenzo*, 171 F.3d 858, 867 (3d Cir. 1999). We have held that policy is made by an official statement of a "decisionmaker possessing final authority to establish municipal policy," and custom can be shown by the presence of a course of conduct that "is so well-settled and permanent as virtually to constitute law." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) (internal quotations omitted). In addition, there must be a direct causal

4

link between a municipal policy or custom and the alleged constitutional violation. *See, e.g., Carswell v. Borough of Homestead*, 381 F.3d 235, 244 (3d Cir. 2004); *Brown v. Muhlenberg Township*, 269 F.3d 205, 214 (3d Cir. 2001).

Here, there is no evidence of any policy or custom of retaliation against officers who, like Chernavsky, exercise their First Amendment rights. Chernavsky argues that the department should have more closely monitored Smythe's actions given the history of assault and misconduct allegations against him. Yet Smythe has never been found guilty of any of these charges. Furthermore, such allegations are irrelevant – Chernavsky's complaint here is not that he was assaulted by Smythe, but that he was retaliated against for reporting Smythe's alleged assault of Martin. Even if there were a custom of overlooking abuse allegations, this does not constitute a custom of retaliation. As such, there is not the causal link required for retaliation under § 1983. *Carswell*, 381 F.3d at 244 (3d Cir. 2004).

C. Claims Against Supervisory Defendants Phillips, Wilson, and Williams

To establish liability, "[t]he necessary involvement can be shown in two ways, either 'through allegations of personal direction or of actual knowledge and acquiescence,'" or through proof of direct violation by a supervisor. *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1294 (3d Cir. 1997). In addition, a plaintiff must show that "an official who has the

5

power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." *Bielevicz*, 915 F.2d at 850 (3d Cir. 1990).

Chernavsky has failed to establish that Phillips, Wilson, or Williams were involved or acquiesced in any unlawful conduct. Phillips testified he met with Smythe after the only time Chernavsky directly complained to Phillips. When Phillips was later contacted in writing by Chernavsky's attorney, Phillips requested more information about the allegations, a request with which neither Chernavsky nor his attorney complied.[4] Similarly, Wilson took sufficient action to address the little information he had regarding any confrontation between the officers. And Chernavsky produced no evidence to show that Williams was even aware of Chernavsky's report against Smythe, let alone of any specific allegations of harassment.[5] Even if these Defendants declined to launch a full investigation, this does not rise to the level of acquiescence in unconstitutional conduct, given the dearth of information provided to them by Chernavsky. The mere awareness that Smythe and Chernavsky did not get along does not amount to deliberate action or knowledge of retaliation sufficient to constitute acquiescence. *See, e.g., Pembaur v. City*

---

[4]Although Smythe does not remember a meeting taking place, the paper trail of the communication between Phillips and Chernavsky's attorney provides support in the record for Phillips' attempt to look into the allegations.

[5]Chernavsky argued that Williams' refusal to reinstate his health benefits constituted retaliation. However, not only was Williams acting in her role as an adjudicator for such disputes, but her decision was based on a well-founded belief that Chernavsky was not entitled to continue to receive these benefits while on unpaid leave and after he had filed for a disability retirement pension.

6

*of Cincinnati*, 475 U.S. 469, 481-83 (1986) (holding that a plaintiff in a § 1983 action must show a deliberate choice to follow an unconstitutional course of action); *Ambrose v. Township of Robinson*, 303 F.3d 488, 493 (3d Cir. 2002).

D.  Claims Against Defendant Smythe

In order to succeed on a § 1983 claim against a non-supervisory employee, a plaintiff must show that the alleged offender acted under the color of law.  "[T]he essence of section 1983's color of law requirement is that the alleged offender, in committing the act complained of, abused a power or position granted by the state."  *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 24 (3d Cir. 1997); *see also Mark v. Borough of Hatboro*, 51 F.3d 1137, 1150 (3d Cir. 1995) ("[A]n otherwise private tort is not committed under color of law simply because the tortfeasor is an employee of the state.").  During the time of the alleged harassment, Smythe did not have supervisory authority over Chernavsky. Although Smythe possessed the title of Corporal, it is undisputed that this is a title of seniority, not of supervisory rank.  While this seniority allowed Smythe to assign Chernavsky to a particular patrol area on at least one occasion, Chernavsky himself had performed this assignment duty when he was the senior officer on a shift.  In addition, Smythe testified he did not even learn of Chernavsky's report against him until after he had left the Patrol Division.  Chernavsky admitted he had no firsthand knowledge that Smythe knew of the report when he assigned Chernavsky to patrol the "less desirable" southern area of town.  But even if we assume that Chernavsky can show Smythe was

7

aware of the report, such limited action is hardly "sufficient to deter a reasonable person of ordinary firmness from exercising his First Amendment rights." *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000) (citations omitted). The relatively benign nature of this action becomes even more apparent upon Chernavsky's own testimony that officers were regularly assigned to patrol the southern sector alone, and that the only reason he considered it less desirable is because it is more rural and therefore less busy.

Even if we assume Smythe participated in the other retaliation alleged by Chernavsky, such actions do not constitute an abuse of power granted by the state. This includes Smythe's bringing charges against Chernavsky with the Police Benevolent Association, which subsequently suspended Chernavsky for 15 months for filing a false report in the Martin incident. Although it was Smythe's position as a police officer that earned him membership in the PBA, this hardly means his actions as a member of this union were in his official capacity as a police officer. We agree with the District Court that Chernavsky has not shown that Smythe abused the power of his office.

E. Plaintiff's State Law Claims

It is well established that in an action with both federal and state claims, "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (codified by 28 U.S.C. § 1367(c)(3) (2004)). Having

properly dismissed Chernavsky's § 1983 claim with prejudice, the District Court was correct to dismiss without prejudice the remaining state law claims.

### III. Conclusion

For the foregoing reasons, we will affirm the judgment of the District Court.