

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-5-2005

# Sommer v. Prudential Ins Co

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3434

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Sommer v. Prudential Ins Co" (2005). *2005 Decisions.* Paper 903.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/903

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No: 04-3434

PATRICIA M. SOMMER,

Appellant

v.

PRUDENTIAL INSURANCE COMPANY OF AMERICA;
AEGON INSURANCE GROUP
f/k/a TRANSAMERICA CORP

_____

On Appeal from the United States District Court
for the District of New Jersey
D.C. No. 03-2141
District Judge: The Honorable Garrett E. Brown, Jr.

_____

Submitted Pursuant to Third Circuit LAR 34.1
July 1, 2005

Before: NYGAARD, SMITH, and FISHER, *Circuit Judges*

(Filed: July 5, 2005)

_____

OPINION

_____

SMITH, *Circuit Judge.*

In this ERISA appeal, Patricia M. Sommer challenges the District Court's grant of

summary judgment that upheld the termination of Sommer's long-term disability benefits

("LTD") under the Transamerica Corporation Disability Plan ("the Plan"). Following the

acquisition of Transamerica by AEGON, N.V., the AEGON welfare benefits committee ("the Committee") succeeded the analogous Transamerica committee as the final appeals body determining benefits eligibility under the Plan.  Because the District Court reviewed Sommer's claim under the appropriate arbitrary and capricious standard and did not err as a matter of law, we will affirm.

The District Court had jurisdiction based on 28 U.S.C. § 1331 and 29 U.S.C. §1132, and we have jurisdiction under 28 U.S.C. § 1291.  Our review over the District Court's grant of summary judgment is plenary.  *Skretvedt v. E. I. DuPont de Nemours & Co.,* 268 F.3d 167, 173-74 (3d Cir. 2001).  Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." F. R. Civ. P 56(c).

The pertinent facts are discussed at length in the District Court's opinion, and because we write solely for the parties, we proceed directly to our analysis.

Sommer's first contention is that the District Court failed to recognize that the Committee operated under a conflict of interest when it denied Sommer's claim for continued LTD benefits.  Thus, Sommer maintains that the District Court erred when it reviewed the Committee's determination under the deferential arbitrary and capricious standard.  In Sommer's view, the decision-making process was infected by a conflict of interest in that the Committee had final decision-making authority over benefits eligibility

that were paid from a trust funded in large part by a related entity, Transamerica. To account for this supposed conflict, Sommer maintains the District Court should have calibrated the deference owed the Committee's determination according to the sliding scale this Court announced in *Pinto v. Reliance Standard Life Ins. Co.,* 214 F. 3d 377, 392 (3d Cir. 2000).

Though in its otherwise thorough opinion the District Court could have been more explicit in explaining why *Pinto's* sliding scale is inapplicable to this case, the summary judgment transcript, to which the District Court referred in footnote 5 of its opinion, contains a sound discussion of why the Committee was not operating under a conflict of interest. In *Pinto*, this Court acknowledged conflicts of interest inhere when an insurer both administers and funds a benefits plan such that any payments operate as debits from the insurer's bottom line. *Pinto*, 214 F. 3d at 378-79. Here, by contrast, at oral argument the District Court properly noted that the eligibility determination was insulated from the source of the funds because under the Plan all benefits payments made to plan participants are made from a trust established solely for that purpose and which the corporation itself could not tap for other uses. The District Court explicitly rejected Sommer's argument here – that AEGON's desire to protect the trust fund gave rise to a conflict cognizable under *Pinto*.

> I think [Sommer's] logic would really rule out the arbitrary and capricious standard in all ERISA cases, or a substantial quantity, where we do have the independent fund here. ... We have a trust fund here. We don't have the general corporate

3

assets of either the employer or of the administrator. The basis for a heightened standard does not apply here.

We agree with the reasoning of the District Court. The Plan, as iterated in the Summary Plan Description, vests the administration and interpretation of the Plan, including eligibility determinations, with the Committee. This stated discretion triggers the arbitrary and capricious standard of review, *Firestone v. Bruch*, 489 U.S. 101, 115 (1989), which light scrutiny will be intensified only if there is good reason to suspect self-dealing on the part of the decisionmaker. *Pinto*, 214 F.3d at 386-87.

The Plan further states that "all contributions" to the Plan "shall be deposited in the Trust Fund," and that, save for reasonable administrative costs, "at no time shall any assets of the Trust Fund be used for, or diverted to, purposes other than for the exclusive benefit of Covered Participants, and other persons receiving or entitled to receive benefits or payments" under the Plan. In all important respects, the plan under review here is identical to the one at issue in *Abnathya v. Hoffman-LaRoche, Inc.*, 2 F.3d 40 (3d Cir. 1993), as is Sommer's argument for a more penetrating review of the denial of her LTD claim, which we rejected in that case.

Abnathya argued that there was an inherent conflict of interest requiring heightened judicial scrutiny where the employer, Hoffman, both funded the LTD plan with fixed contributions and made eligibility determinations. Importantly, Hoffman's contributions were paid into a trust established to provide moneys "for the exclusive benefit of Members under th[e] Plan or for the payment of expenses of the Plan and the

4

Fund." *Id.* at 45 n.5. The *Abnathya* panel reasoned, "Although some degree of conflict inevitably exists where an employer acts as the administrator of its own employee benefits plan, the conflict here is not significant enough to require special attention or a more stringent standard of review under *Firestone*." *Id.*

Sommer's situation is identical to that of Abnathya, and accordingly, our review of the Committee's decision is pursuant to the arbitrary and capricious standard. Under this deferential standard, we are "not free to substitute our own judgment" for that of the Committee, and we will overturn its decision only if it was "without reason, unsupported by the evidence or erroneous as a matter of law." *Martorana v. Board of Trs. of Steamfitters Local Union 420 Health, Welfare, and Pension Fund*, 404 F.3d 797, 801 (3d Cir. 2005).

We also disagree with Sommer's second contention – that the Committee's decision to terminate her LTD benefits cannot survive even deferential review. Under the arbitrary and capricious standard, the Committee acted well within the discretion accorded it by the Plan. The record reveals that what Sommer argues was a selective evaluation of her medical history is more accurately characterized as the Committee's weighing of the evidence, which it was entitled to do under the Plan.

Sommer also attempts to undermine the substantially similar opinions of Drs. Sawyer and Kaszubski – that with therapy Sommer could return to sedentary work – by noting that neither averred Sommer's earnings would be at least 80% of her pre-disability

5

compensation, as the Plan requires to terminate LTD benefits after twenty-four months. Sommer's strategy is misguided.  Dr. Sawyer and Dr. Kaszubski were retained for their medical, not human resources, expertise.  They were not obligated to apply their medical opinions to calculate Sommer's earnings potential as a Transamerica employee limited to sedentary work.  The Committee was entitled to rely on the doctors' evaluations, and to extrapolate from them that Sommer could, with training and rehabilitation, become able to earn at least 80% of her pre-disability salary.

Based on the foregoing discussion, we will affirm.