

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-8-2006

# S. v. Sch Dist Pittsburgh

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-1759

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"S. v. Sch Dist Pittsburgh" (2006). *2006 Decisions*. Paper 936.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/936

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 05-1759

———————

MELISSA S., by Her Natural
Guardian Karen S.,
Appellant

v.

SCHOOL DISTRICT OF PITTSBURGH;
LINDA CORDISCO; RUTHANN REGINELLA,
in their official and individual
capacities

———————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
D.C. Civil No. 03-cv-01726
District Judge: The Honorable Gary L. Lancaster

———————

Submitted Under Third Circuit LAR 34.1(a)
March 30, 2006

———————

Before: McKEE, BARRY and VAN ANTWERPEN, Circuit Judges

———————

(Opinion Filed: June 8, 2006)

———————

OPINION

———————

BARRY, Circuit Judge

Karen S., on behalf of her daughter Melissa, appeals from an order entered by the United States District Court for the Western District of Pennsylvania granting appellees' motion for summary judgment. For the reasons that follow, we will affirm.

## I.

Because we write only for the parties, who are familiar with the facts, we will not recite them except as necessary to the discussion. Melissa, who has Downs Syndrome, was a 16-year-old ninth grade student in the fall of 2002 at the School District of Pittsburgh's ("PSD") Brashear High School ("Brashear"). On November 12, 2003, Karen S. filed suit against PSD; PSD's special education program officer, Linda Cordisco; and Brashear's principal, Ruthann Reginella. The complaint asserted, pursuant to 42 U.S.C. § 1983, violations of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1401 *et seq.*, and the Fourteenth Amendment's Due Process Clause. Violations of section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, were also asserted.

The District Court granted appellees' motion for summary judgment. The Court found that the record contained insufficient evidence from which a reasonable jury could find that appellees violated Melissa's rights. This timely appeal followed.[1]

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1331. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over the District Court's decision to grant summary judgment to appellees. *See Martorana v. Bd. of Trs. of*

2

**II.**

**A.**

Karen S. alleges that appellees violated Melissa's right under the IDEA to a "free appropriate public education" by failing to implement her individualized educational program ("IEP"), and by using physical restraints and isolation in order to control her behavioral outbreaks instead of developing a behavioral plan for her. Karen S. also claims that Melissa was frequently left without an aide, and that the learning environment at Brashear caused her to regress educationally. She seeks compensatory and punitive damages on her § 1983 claims.[2]

The IDEA conditions a state's receipt of federal funds for special education programs on its implementation of "policies and procedures to ensure that . . . [a] free

_____

*Steamfitters Local Union 420*, 404 F.3d 797, 801 (3d Cir. 2005). Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "We review the facts in the light most favorable to the party against whom summary judgment was entered." *Coolspring Stone Supply, Inc. v. Am. States Life Ins. Co.*, 10 F.3d 144, 146 (3d Cir. 1993).

[2] On September 30, 2003, the parties entered into a settlement agreement after a due process hearing, pursuant to 20 U.S.C. § 1415(b)(2). In the agreement, the parties determined Melissa's placement for the 2003-04 school year, and Karen S. "agree[d] to settle, discontinue and withdraw all issues as" to "[w]hether Melissa received [a] free and appropriate public education for the 2002-03 school year; and . . . [w]hether Melissa's placement was appropriate." (MS App. 116-17.) The District Court rejected appellees' argument that this agreement barred the § 1983 IDEA claim for damages, citing our decision in *W.B. v. Matula*, 67 F.3d 484, 497-98 (3d Cir. 1995.), but nevertheless *sua sponte* granted summary judgment to appellees on the IDEA claim. (Op. at 9-10.) None of the parties challenges the Court's actions, and we express no opinion on them here.

appropriate public education is available to all children with disabilities . . . ." 20 U.S.C. § 1412(a)(1)(A). A free appropriate public education "'consists of educational instruction specifically designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child to 'benefit' from the instruction.'" *W.B. v. Matula*, 67 F.3d 484, 491 (3d Cir. 1995) (quoting *Board of Education v. Rowley*, 458 U.S. 176, 188-89 (1982)). The "primary vehicle" for implementing a free appropriate public education is the IEP. "The IEP consists of a detailed written statement arrived at by a multi-disciplinary team summarizing the child's abilities, outlining the goals for the child's education and specifying the services the child will receive." *Polk v. Central Susquehanna Intermediate Unit 16*, 853 F.2d 171, 173 (3d Cir. 1988) (citing 30 C.F.R. § 300.347), *cert. denied*, 488 U.S. 1030 (1989).

To prevail on a claim that a school district failed to implement an IEP, a plaintiff must show that the school failed to implement substantial or significant provisions of the IEP, as opposed to a mere *de minimis* failure, such that the disabled child was denied a meaningful educational benefit. *Houston Indep. Sch. Dist. v. Bobby R.*, 200 F.3d 341, 349 (5th Cir. 2000). Flexibility to implement an IEP is maintained, yet the school district is accountable for "confer[ring] some educational benefit upon the handicapped child," as required by the IDEA. *T.R. ex rel. N.R. v. Kingwood Twp. Bd. of Educ.*, 205 F.3d 572, 577 (3d Cir. 2000) (citing *Rowley*, 458 U.S. at 188-89).

Here, the District Court determined that a reasonable jury could not conclude that

4

appellees failed to implement Melissa's IEP because there was no evidence of non-implementation. We agree. An IEP for Melissa was approved after an IEP meeting between Karen S. and several PSD officials on September 20, 2002.[3] The IEP set various educational goals for Melissa and placed her in a learning support classroom for most subjects. Additionally, the IEP called for a full-time aide to assist Melissa during the school day. Moreover, several other Brashear and PSD officials were involved in observing Melissa, overseeing her progress, and holding frequent meetings[4] to compare that progress to her IEP's goals and to discuss her behavior. Karen S. attended these IEP meetings and raised her own concerns and objections. When Melissa's behavior in class was increasingly becoming a problem—an issue addressed in more detail below—further IEP meetings were held with Karen S., and an outside agency was hired to perform a functional behavior assessment of Melissa in order to develop a behavioral plan for her. That behavioral assessment was ongoing when Karen S. chose to remove Melissa from Brashear.

Karen S. alleges that PSD failed to implement the IEP because it failed to provide Melissa with an aide every day. Even granting Karen S. the benefit of every factual inference, as we must, there is simply no evidence that Melissa was ever left unattended

---

[3] An initial IEP meeting was scheduled for August 29, 2002, prior to the start of classes. Karen S. failed to attend the meeting.
[4] IEP meetings were held on September 20, October 9, November 6, and November 25, 2002.

while at Brashear.[5] On days when an aide could not be provided, Karen S. was notified by the school and told to keep Melissa home for the day. Even assuming that Karen S.'s allegation that this occurred "several" times is correct, this is not the kind of substantial or significant failure to implement an IEP that constitutes a violation of the IDEA.

Beyond Karen S.'s claim that Melissa did not consistently have an aide, it is difficult to discern exactly how she believes appellees failed to implement the IEP. Ms. Cordisco testified that Karen S. accused her of not implementing the IEP during a phone call on the first day of school in September 2002 because Melissa's math instruction was above her skill level. Additionally, an October 11, 2002 letter from Karen S.'s lawyer to PSD claimed that the IEP was not being implemented because Melissa was not given homework. Even assuming these allegations are true, such *de minimis* failures to implement an IEP do not constitute violations of the IDEA. *Houston Indep. Sch. Dist.*, 200 F.3d at 349.[6]

We also agree with the District Court that a reasonable juror could not conclude

---

[5] Kim Paeys was Melissa's aide from the first day of class, September 3, 2002, until approximately September 11 or 12, 2002 when she left that position. A full time replacement, Constance Herring, was hired on September 23, 2002. In the interim, a substitute teacher, Ms. Muskat, acted as Melissa's aide.

[6] We note that Melissa improved both behaviorally and educationally while at Brashear, and thus we also reject her contention that she was subject to a learning environment there that caused her to regress. Melissa's behavioral problems were present from the start of her time at Brashear. Nevertheless, Herring testified that Melissa's behavior did improve during the school year. Additionally, Cheryl Kennedy, the special education specialist for PSD high schools, observed Melissa progress educationally.

that appellees mishandled Melissa's frequent behavioral outbursts such that they violated the IDEA. In *Honig v. Doe*, 484 U.S. 305, 325-26 (1988), the Supreme Court held that while a school district cannot unilaterally change the placement of a student it deems to be dangerous, it can use "its normal procedures for dealing with children who are endangering themselves or others," such as "timeouts, detention, or the restriction of privileges," or suspension.

Melissa had serious problems controlling her behavior at Brashear. At times she sat on the floor kicking and screaming, struck other students, spit at and grabbed the breast of a teacher, refused to go to class, and once had to be chased by her aide after running out of the school building. On a few occasions, when Melissa refused to get off the floor or left the building, security guards were called to escort her from the immediate area, sometimes having to hold her arms in order to control her. As the District Court correctly found, nothing in the record suggests that the guards abused her or treated her any differently than other students with behavioral outbursts.

One of the tactics used by PSD to calm Melissa down was to bring her to a "time-out area" in an unused office, where her aide, Constance Herring, and others would encourage her to return to class and give her work to do. This tactic comes within the class of non-placement changing "normal procedures for dealing with children who are endangering themselves or others" the Supreme Court spoke of in *Honig*, and did not

violate the IDEA.[7]

Furthermore, a reasonable juror could not conclude, based on the record evidence, that appellees failed to implement a behavioral plan for Melissa in a timely manner. Upon observing her outbursts early in the school year, PSD officials almost immediately began assessing her behavior. When it became apparent that her behavioral issues went beyond mere problems adjusting to a new school, PSD hired a specialist to examine her behavior, determine its causes, and determine "how we could make some adjustments through behavioral shaping." (PSD App. 9, 12.) The specialist finished his evaluation in early January 2003, and a meeting with Karen S. was held on January 15, 2003 to implement his recommended behavior support plan into Melissa's IEP.

Karen S. does not point to any record evidence contradicting these efforts by appellees, but only claims that she was not made aware of certain of Melissa's behavioral incidents until the due process hearing, which began on January 6, 2003. Even assuming this to be true, this is not evidence from which a reasonable juror could conclude that appellees denied Melissa a behavioral plan in violation of the IDEA.

In sum, we agree with the District Court that a reasonable juror could not conclude that appellees violated Melissa's rights under the IDEA.

---

[7] Karen S. alleges that PSD's behavior controlling techniques violated Pennsylvania law implementing the IDEA's requirements, specifically, 22 Pa. Code §§ 14.133(c). That provision, however, lists requirements for an IEP that includes a "behavior support program"—the very type of program that Brashear was working on implementing when Karen S. removed Melissa from Brashear in December 2002.

**B.**

While the IDEA grants a positive right to a "free appropriate public education," section 504 of the Rehabilitation Act of 1973 essentially prohibits federally funded entities from denying a free appropriate public education on the basis of disability. *See Jeremy H. v. Mount Lebanon Sch. Dist.*, 95 F.3d 272, 278 (3d Cir. 1996). The Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). We said in *Matula*, 67 F.3d at 492-93, that "there appear to be few differences, if any, between IDEA's affirmative duty and § 504's negative prohibition." Because the allegations underlying the Rehabilitation Act claim do not differ substantively from those underlying the IDEA claim, we will also affirm the District Court's grant of summary judgment on this claim.

**C.**

Karen S. alleges that a reasonable juror could conclude that Melissa's substantive due process rights under the Fourteenth Amendment were violated because appellees failed to "regularize the hiring and scheduling of aides" and failed to remedy her behavioral problems until after a due process hearing was held. We disagree.

The substantive component of the Due Process Clause "protects individual liberty against certain government actions regardless of the fairness of the procedures used to

implement them." *Gottlieb v. Laurel Highlands Sch. Dist.*, 272 F.3d 168, 172 (3d Cir. 2001) (quotations omitted). Only state conduct that is "arbitrary, or conscience shocking, in a constitutional sense" rises to this level. *County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998). The exact degree of culpability necessary for government action to be considered conscience shocking varies from case to case. *Miller v. City of Philadelphia*, 174 F.3d 368, 375 (3d Cir. 1999). Even accepting Karen S.'s contention that deliberate indifference is the degree applicable here, for the reasons set forth above, the record does not support a finding that appellees were deliberately indifferent to Melissa. *See Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 728-31 (3d Cir. 1989) (finding summary judgment inappropriate where, *inter alia*, evidence existed that school officials received, and covered up, at least five complaints of sexual assaults over four year period). No rational juror could so conclude.

## D.

Finally, Karen S. believes that a male teacher sexually assaulted Melissa while she was at Brashear, and thus that appellees violated Title IX of the Education Amendments of 1972, which bars federally funded educational programs from discriminating on the basis of sex. 20 U.S.C. § 1681(a). An action for implied damages under Title IX, such as this one, is expressly "predicated upon notice to an 'appropriate person'"—such as "an official of the recipient entity"—of the discrimination so that the entity can be given an opportunity to rectify the situation. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274,

290 (1998).

We agree with the District Court that no such notice was given to PSD. Karen S. claims that notice was provided to PSD via her counsel's October 11, 2002 letter to an attorney in PSD's law department. The letter complains that Melissa had no work to do, that her IEP was not being implemented, that her "emotional condition is worsening," and requested a due process hearing. (MS App. 96.) Nowhere does it allege that Melissa was the victim of sexual abuse by a teacher at Brashear. Summary judgment for appellees on the Title IX claim was appropriate.

### III.

It is clear that Karen S. was unhappy with Melissa's time at Brashear. That unhappiness, however, cannot support the constitutional and statutory violations she has alleged. We conclude that the record contains insufficient evidence to allow a reasonable juror to find that appellees violated the IDEA, the Rehabilitation Act, the Fourteenth Amendment, or Title IX. We will affirm the judgment of the District Court.